No. 57.—JOHN DARDEN, plaintiff in error, vs. THOMAS WYATT, defendant in error.

[1.] A father dies in a county, leaving minor children; soon afterwards, the mother dies, leaving the minors in the same county. Then, the grand-father of the minors, who resides in another county, carries the minors to his home in that county, to live with him. Whilst they are thus living with him, an uncle applies, in the first county, for letters of guardianship of the minors: *Held*, that the Court of Ordinary, of the first county, had no authority to grant the letters; but that the authority to grant them, was in the Court of Ordinary of the second county.

Application for guardianship, in Morgan Superior Court. Tried before Judge Hardeman, March Term, 1854.

John Darden, the paternal uncle, applied to the Ordinary of Morgan county, for letters of guardianship for the minor orphan children of Stephen J. Darden, deceased. Thomas Wyatt, the maternal grand-father of these children, caveated the application, on the ground that the jurisdiction for granting letters of guardianship, was in the Ordinary of Jasper county, and not in the Ordinary of Morgan county. The facts were as follows:

Stephen J. Darden died in Morgan county, leaving a widow and children. The children remained with the mother in Morgan county, until her death. Neither parent appointed any testamentary guardian. After her death, Thomas Wyatt, the maternal grand-father, took charge of the children and removed them to his residence in Jasper county, and had them at his

Darden *vs.* Wyatt.

residence in Jasper, when John Darden applied for letters of guardianship. John Darden is the administrator of the deceased father.

The Court charged the Jury, that if the removal of the children to Jasper county, before the application for guardianship, was without any fraudulent intent, on the part of Wyatt, to defeat the jurisdiction of the Ordinary of Morgan county, then the removal was legal and proper, and worked such a change of the residence and domicil of the children, as would give jurisdiction to the Ordinary of Jasper county.

This charge is assigned as error.

A. WINGFIELD and J. HILL, for plaintiff in error.

N. G. FOSTER, for defendant in error.

*By the Court.*—BENNING, J., delivering the opinion.

[1.] In 1838, the Legislature passed "an Act to more fully define the legal residence of citizens and inhabitants of this State". This Act is in these words : " Whereas, no small degree of embarrassment has arisen, and is likely to arise, from the indefinite manner in which the place of residence of citizens and inhabitants of this State is defined by law—for remedy whereof—

" SEC. I. *Be it enacted,* that from and after the passage of this Act, the place where the family of any person shall permanently reside, in this State; and the place where any person having no family, shall generally lodge, shall be held and considered as the most notorious place of abode of such person or persons, respectively".

This Act, by its title, preamble and body, extends to all persons who are citizens or *inhabitants* of this State. It, therefore, extends to minors.

It makes the test of residence, of those who have no family, the place where they "shall generally *lodge*" ; that, therefore, is the test for the minors in this case.

To "lodge" has, for one of its meanings, "to rest or dwell, for a time—as for a night—a week—a month". (*Webs. Dic.*) And this seems to be the meaning which it has in the Act. Wherever a person, then, "rests or dwells, for a time", whether he does so rightfully or wrongfully, voluntarily or involuntarily, he lodges. To lodge, is a mere matter of fact.

At the time when John Darden applied to the Ordinary of Morgan county, for letters of guardianship of the minors, in this case, they were in Jasper county with their grand-father, Thomas Wyatt, resting and dwelling ; that is, lodging in that county with him. That was the matter of fact. In that county, therefore, according to the Act, was their "notorious place of abode"—their residence, at that time.

This being so, did the Ordinary of Morgan have authority to grant letters of guardianship of the minors, to John Darden, according to his application?

In 1839, the Legislature passed another Act, by which they, among other things, declared this : "Letters of guardianship shall *only* be granted by the Court of Ordinary of the county where the minor or ward *resided, at the time* application for letters of guardianship is made, if said minor or ward reside in this State".

The minors, in this case, resided in this State. But the Court of Ordinary of Morgan, at the time when John Darden applied to it for the letters of guardianship, was not the Court of Ordinary of the county in which the minors resided. They, then, resided in the county of Jasper. It follows, that the Court of Ordinary of Morgan, had no authority to grant the letters of guardianship.

This being so, was there any error in the charge of the Court?

That charge, in substance was, that if the removal of the children from Morgan county to Jasper, was made before the application for guardianship, and without any fraudulent intent, on the part of Wyatt, to defeat the jurisdiction of the Court of Ordinary of Morgan, then, the removal was good, and was sufficient to work such a change in the residence of the mi-

Darden *vs.* Wyatt.

nors, as to give jurisdiction over them to the Ordinary of Jasper county.

According to the view which has been taken of the Acts of 1838 and 1839, there is certainly nothing wrong in this charge.

We affirm the decision of the Court below.