SAMUEL T. PAYNE, plaintiff in error, *vs.* MARY T. PAYNE, defendant in error.

In a contest about the possession of two minor children, between the mother and the testamentary guardian, who is the grand-father, when it is shown that one of them is only three years old, and the other one year old, and still at the mother's breast, this Court will not, upon the case made by this record, control the discretion of the Court below, whose judgment is in favor of the mother's right to their custody, till the period arrives when it is proper that the testamentary guardian take possession of the minors for the purposes of their education.

*Habeas Corpus.     Certiorari.* Decided by Judge POPE. Floyd Superior Court.     March Term, 1869.

R. F. Payne died in April, 1868, testate, leaving his wife, Mary H. Payne, and two sons, Samuel H., born in April, 1866, and Benjamin E., born in February, 1868. The fourth item of his will was as follows: " Having implicit confidence in the integrity, experience, and judgment of my father, Samuel T. Payne, and, as my children are young, and to be raised and educated, as well as their circumstances will permit, and, as my wife is also young, and without much financial experience, I do ordain, constitute and appoint my father, Samuel T. Payne, guardian both of the persons and property of my two before-mentioned sons, Samuel and Benjamin, with full power and authority to appropriate all or such portions of their estate hereby bequeathed to them, respectively, as, in his judgment, he may deem best for their maintenance and education, and I do hereby counsel and advise my beloved wife to stay and reside with my father, Samuel T. Payne, and to be governed by his counsel and advice, at least, during her widowhood, being conscious that he will, as he has done, act the part of a father by her." Said Samuel T. was the nominated executor. The widow and her sons lived with him. She assisted in the household duties, etc., for some time, but finding that mode of life inconvenient and disagreeable, she determined to leave, and take her sons with her. Said Samuel T. Payne would not allow her to take the boys away. On the 20th of February, 1869,

Payne *vs.* Payne.

she sued out, against him *habeas corpus*, alleging that he detained said boys illegally. The Ordinary issued the writ, and, in reply to it, he answered that he held them under said item of said will and his letters of executorship under the same.

At the hearing, said Samuel T. testified that said Mary H. had only about two hundred dollars worth of property, besides some beds and bedding; that he and those who knew her, looked upon her as a person of weak mind, and unfit to raise children. He further swore that their father often told him that he wished him to keep the boys, and not to allow them to go elsewhere; that he would about as soon see them dead as raised at Tult's. (Tult was Mrs. Payne's step-father, and she intended going to him. He lived in Lincoln county, two hundred and fifty miles from Rome, Georgia.) He said he had kept, since testator's death, and was willing yet to keep, the widow and the boys.

The Ordinary directed the boys to be delivered to their mother, and that Samuel T. Payne should pay the costs. The defendant's attorneys sued out a *certiorari* to review said decision. Upon argument, the Judge overruled the *certiorari*, and ordered the boys, at once, delivered to their mother. This is assigned as error.

UNDERWOOD & ROWELL, for plaintiff in error.

ALEXANDER & WRIGHT, for defendant in error.

BROWN, C. J.

Section 1785 of the Revised Code is in these words: "Upon the death of the father, the mother is entitled to the possession of the child until his arrival at such age that his education requires the guardian to take possession of him. In cases of separation of the parents, or the subsequent marriage of the survivor, the Court, upon writ of *habeas corpus*, may exercise a discretion as to the possession of the child, looking solely to his interest and welfare."

Section 3948 declares that: " In all writs of *habeas corpus*,

sued out on account of the detention of a wife or child, the Court, on hearing all the facts, may exercise a sound discretion as to whom the custody of such wife or child shall be given, and shall have power to give such custody of a child to a third person."

In *Lindsey vs. Lindsey*, 14 *Ga. R.*, 657, this Court ruled that, upon the writ of *habeas corpus* sued out by one parent for the purpose of obtaining from the other the possession of an infant child, the question as to whom the same shall be awarded, is intrusted to the discretion of the Circuit Judge before whom the writ is made returnable, and it must be a flagrant abuse of that discretion which will authorize a reviewing Court to interfere. Judge Starnes, delivering the unanimous opinion of the Court, says : "There is an obvious propriety in this. The Judge, in such case, is more of the vicinage, as it were, than this Court,—has probably better opportunity of knowing the parties, their means, etc. He has them before him, and has the benefit of their demeanor and appearance, in aid of his judgment. So, of witnesses. He may be familiar with their reputations, looks them in the face when they speak, has the benefit of their conduct and appearance, and pronounces his judgment accordingly. For these reasons, a case of glaring error should be required to authorize an interference by us with a judgment so formed."

In *Starr vs. Barton*, 34 *Ga. R.*, 99, this Court ruled that the judgment of the Court, upon the facts in cases of *habeas corpus* is analogous to the verdict of the jury, and will not be disturbed by the reviewing Court, if there be enough to support it, although there may have been other testimony strongly in conflict with it. In *Boyd vs. Glass*, 34 *Ga. R.*, 253, it is decided by this Court that, when infants are brought before a *habeas corpus* Court, the Court will exercise its discretion as to their custody, and unless such discretion has been flagrantly abused, a reviewing Court will not interfere. Under the law, as laid down in the Code, and as expounded by this Court in those cases, we do not feel at liberty to interfere with the judgment of the Court below in this case.

The Ordinary before whom the writ was sued out, who resides in the county, and is well acquainted with the parties, refused to take these little boys from their mother at so tender an age, and the Judge of the Superior Court sustained his decision. We are unable to say that there has been a flagrant abuse of legal discretion in this case. Unless there are very controlling reasons to the contrary, in the particular case, the mother is the proper custodian of infants of the age of those now in controversy. When they arrive at an age which requires their transfer to the possession of their guardian for the purposes of their education, there can be no doubt of his right to have the control of them.

We admire the fidelity with which the grand-father, in this case, who is the testamentary guardian, has labored to do what he regarded his duty to these children, in the execution of the delicate trust confided to him by his deceased son. But, at this period of their existence, we do not feel at liberty to disturb the judgment rendered in the Court below, against his right to the immediate possession of his wards.

Judgment affirmed.