## JENKINS v. CLARK.

1. **Guardian:** APPOINTMENT: JURISDICTION: DOMICILE. The probate court of the county in which a minor child has its domicile is the court which has jurisdiction to appoint a guardian of its person, though it be not at the time a resident of such county. (Compare *Love v. Cherry*, 24 Iowa, 204.)

2. **Domicile:** OF MINOR CHILD: WHAT IS CHANGE OF. The domicile of a minor child is the domicile of its parents, and after the death of its parents its domicile continues the same until another is lawfully acquired. But where the father was dead, and the mother, shortly before her death, in her will requested a sister residing out of the state to take and raise the child, and the sister accordingly took the child out of the state, but assumed no legal obligation toward it, *held* that the domicile of the child was not changed.

3. **Guardian:** RIGHT TO CUSTODY OF WARD: EFFECT OF PARENT'S
REQUEST. Under § 2249 of the Code, a guardian of the person of a
child has the same right to its custody as if he were its parent. And
where he is not shown to be an unfit person to have such custody, the
child will not be taken from him and given to an aunt, though its
mother in her will has requested that the aunt take and raise the child.

4. **Habeas Corpus:** CUSTODY OF CHILD: PRIME CONSIDERATION: EVI-
DENCE ON APPEAL. Where the right to the custody of a minor child
is involved in a *habeas corpus* proceeding, the best interest of the child
is the first consideration; but the action is regarded as an ordinary one,
and, on an appeal to this court, the judgment of the lower court can-
not be disturbed unless it is clearly contrary to the evidence as to the
best interest of the child.

*Appeal from Cass District Court.*

SATURDAY, MARCH 19.

THIS is a proceeding by *habeas corpus* to determine the
right to the custody of May Jenkins, who is a minor and an
orphan. The controversy is between the guardian and the
defendant, who is an aunt of the minor. The district court
awarded the custody of the child to the guardian. The
defendant appeals.

*R. G. Phelps*, for appellant.

*L. L. DeLano*, for appellee.

REED, J.—When this proceeding was instituted, May Jen-
kins was about six years old. Her parents were Benjamin
F. and Josephine Jenkins. Her father died in December,
1882, and her mother in the following October. They had
resided for many years in Audubon county, and she was
born in that county. They left surviving them six children,
all of whom are minors. Benjamin F. Jenkins left an estate
consisting of a valuable farm, and personal property of the
value of $10,000. John T. Jenkins, the present guardian, is
a brother of Benjamin F., and he was administrator of his
estate, and the administration has been fully closed. Jose-
phine Jenkins executed a will before her death, by which

she devised all of her property to her children. In this will she nominated John T. Jenkins as executor; and, when the will was admitted to probate, he qualified and entered upon the duties of the trust. The will contains the following clause: "It is my further desire that John T. Jenkins take Olive Jenkins, Charles W. Jenkins and Hayden Jenkins; Mary Sheer take my daughter Maggie Jenkins; Eliza Clark take May Jenkins; Laura Gilbert take my daughter Pearl Jenkins,—and raise and care for each and all of said children as if they were their own." The defendant is the Eliza Clark mentioned in the clause, and she and Mary Sheer and Laura Gilbert are sisters of Mrs. Jenkins. The will was executed but a few days before Mrs. Jenkins died. At that time, Mrs. Clark resided in Dakota territory, but during the last sickness of Mrs. Jenkins she was present with her, and assisted in nursing and caring for her. Soon after the death of Mrs. Jenkins she returned to her home, taking May with her. Some time after that, John T. Jenkins was appointed guardian of the property and persons of all the children by the circuit court of Audubon county. A short time before this proceeding was instituted, Mrs. Clark came to Iowa on a visit, bringing May with her. It appears that a doubt had arisen as to the validity of the action of the court in appointing a guardian of her person, such doubt arising out of the fact that she was absent from the state when the appointment was made, and the guardian, accordingly, after she was brought back to the state, applied for and obtained a second appointment as guardian of her person, the appointment being made by the same court. At the time this order was made, however, the child was in Cass county, and she had not been in Audubon county since her return to the state.

The first question which arises in the case is whether the guardian, by virtue of his appointment, is entitled to the custody of the child as against the defendant. In determining this question, it is necessary to consider the relation which each of the parties bears to the child. It is insisted

that the action of the circuit court of Audubon county in

**1. GUARDIAN: appointment: jurisdiction: domicile.** making the appointment of a guardian of the person is invalid, for the reason that the child was not within the jurisdiction of the court when either of the orders was made. But we think this position cannot be sustained. The law undoubtedly is that the proper court at the place of domicile of the child has jurisdiction of the matter of the guardianship of his person. A person may have a domicile at one place, while he is a resident of another. *Love v. Cherry*, 24 Iowa, 204. Now, the domicile of a child is to be determined by the domicile

**2. DOMICILE: of minor child: what is change of.** of the parent; and, when a domicile is once fixed, it remains until another is lawfully acquired. Schouler, Dom. Rel. § 230. If the parent change his own domicile, that of the minor child is thereby changed. The domicile of May Jenkins at the time of the death of her parents was in Audubon county. They had done nothing which in law could have the effect of changing it. Mrs. Clark could not change it, for she bore no legal relation to the child. True, she was requested by the mother, by the will, to raise and care for her, and had taken charge of her in obedience to that request. But she was under no legal obligation to do that; nor could she have been compelled to continue to care for her for a single day, but might have terminated her relation to her at pleasure. The child could not change its own domicile, for it was not *sui juris*. The domicile of the child, then, remained at Audubon county, notwithstanding the fact that she was personally in another jurisdiction, and the circuit court of that county had jurisdiction of the guardianship of her person.

It is provided by statute (Code, § 2249) that "guardians of the persons of minors have the same power and control

**3. GUARDIAN: right to custody of ward: effect of parent's request.** over them that parents would have if living." We think there can be no doubt as to the effect of this provision. By his appointment, the guardian is vested with the same right to the custody of the

ward as the parent has of his own child. This express provision cannot be defeated by the clause in the will; for, as we have seen, that created no legal relation between defendant and the child. Nor did it impose any legal obligation upon defendant. What she had done in the premises had been done in obedience to the expressed wish of the mother of the child, and her natural affection for it, and not because she was under any legal obligation in the matter. It will readily be conceded that the right of the guardian to the custody of the ward is not absolute. If he were shown to be an unfit person to have the custody of it, the courts would not hesitate to award the custody to another. But no question of that character is made in the case. Neither of the parties make any question as to the personal fitness of the other; and we have no doubt that in the personal custody of either the child would have the same care and kindness of treatment that a loving and kind parent bestows upon his own child. But, aside from any question as to the best interest of the ward, we think the intent of the statute is that the guardian shall have the custody of it.

If, however, the case depended upon consideration of the best interests of the child, which, after all, is the matter of prime consideration in cases of this kind, we would not be warranted in disturbing the judgment of the district court. The court might well have determined, from the evidence as to the financial condition of defendant and her husband, and the disadvantages of their place of residence and other circumstances, that the interest of the child would be best served by placing it in the custody of the guardian. The proceeding is regarded as an ordinary action in which the finding of the trial court in questions of fact, unless clearly contrary to the evidence, is conclusive. *Kline v. Kline*, 57 Iowa, 386; *Fouts v. Pierce*, 64 Id., 71.

4. HABEAS corpus: custody of child: prime consideration: evidence on appeal.

AFFIRMED.