In re William A. WHITE and Cecelia
B. White, Debtors,

Glenn R. NELSON, Trustee for the
Estate of William A. White and
Cecelia B. White, Appellant,

v.

William A. WHITE and Cecelia B. White,
husband and wife, and the marital com-
munity thereof, Appellees.

No. C84–1347R.

United States District Court,
W.D. Washington.

Feb. 8, 1985.

Order Denying Motion to Alter or
Amend Judgment March 12, 1985.

William A. Weinstein, Seattle, Wash., for
appellant.

Willard Hatch, Daniel R. Merkle, Alan K.
Willert, Seattle, Wash., for appellees.

ORDER OF REVERSAL AND
REMAND

ROTHSTEIN, District Judge.

THIS MATTER comes before the court
on trustee Glenn R. Nelson's appeal of an
Order of the Bankruptcy Court excluding
from the estate in this matter debtor Wil-
liam A. White's interest in an employee
profit-sharing plan. The court has careful-
ly considered the memoranda submitted in
support of and in opposition to this appeal,
together with the relevant file and records.
The court finds that oral argument will not
be necessary.

I. FACTUAL BACKGROUND

The material facts are set forth in some
detail in the Bankruptcy Court's Order of
August 22, 1984. These facts may be sum-
marized as follows:

William A. White and Cecelia B. White
filed a voluntary joint petition under Chap-
ter 11 of the Bankruptcy Code on July 21,
1982. The debtors' Chapter 11 proceeding
was converted to a Chapter 7 proceeding
on January 26, 1984. Glenn R. Nelson was
appointed as trustee of the estate in this
matter on January 31, 1984.

At the time of the bankruptcy, the
Whites owned, among other things, 100%
of White Metal Fabricating, Inc. ("White
Metal"). As an employee of White Metal,
William White owned a vested interest in
the White Metal profit-sharing plan in the
amount of $315,000, or slightly less than

95% of total funds vested under the plan. These funds consist entirely of contributions from the net profits of White Metal.

White Metal established its employee profit-sharing plan in 1967 and amended the plan in 1976 so as to comply with the Employee Retirement Income Security Act of 1974 ("ERISA"). The terms of the plan are set forth in the White Metal Fabricating, Inc. Profit-Sharing Plan and Trust Agreement. The Agreement names William A. White as trustee of the trust and plan administrator and named fiduciary of the plan. As trustee, White loaned $304,-000 of trust funds to Jeffron Enterprises on August 1, 1981, and March 15, 1982. Jeffron is a joint venture between the Whites and White Metal and is now, like the Whites, in bankruptcy.

Prior to bankruptcy, White was clearly in control of both White Metal and the profit-sharing plan. As a plan participant, however, White's power to alienate his interest in the plan was limited by the following provision of the Plan and Trust Agreement:

19.06   Protection of Trust Funds, Contributions and Benefits

No part of the Trust funds, contributions, or benefits shall be subject in any manner by a participating employee, former participant, or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be void.

Further, no part of the Trust funds, contributions or benefits, shall be liable for the debts of a participating employee, former participant, or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee, former participant, or beneficiary, and any such attempt shall be void.

In the Order of August 22, 1984, the Bankruptcy Court ruled that, under 11 U.S.C. § 541(c)(2), William White's interest in the profit-sharing plan is excluded from the estate created by commencement of the bankruptcy proceeding. The Bankruptcy Court did not reach the related issue whether White's interest in the plan is exempted from the estate under 11 U.S.C. § 522.

The trustee appeals from the Order of August 22, 1984, on the grounds that 11 U.S.C. § 541(c)(2) excludes from an estate only beneficial interests in spendthrift trusts, and the profit-sharing plan is not such a trust.

## II. EXCLUSION UNDER SECTION 541(c)(2)

Under 11 U.S.C. § 541(a)(1), all property in which a debtor has a "legal or equitable interest" goes into the estate created by the commencement of a bankruptcy proceeding. In general, restrictions or conditions on transfer of such an interest do not affect the inclusion of the interest in the estate. 11 U.S.C. § 541(c)(1)(A). However, 11 U.S.C. § 541(c)(2) ("Section 542(c)(2)") provides that,

A restriction on transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a [bankruptcy proceeding].

This provision effectively excludes from the estate any beneficial interest in certain trusts. The question is whether an ERISA profit-sharing plan is the kind of trust to which Section 541(c)(2) applies.

The Bankruptcy Court held that the debtor's interest in the ERISA plan in question was excluded from the estate in this matter because the plan met the apparent requirements of Section 541(c)(2). These requirements, as applied by the Bankruptcy Court, are simply that the plan restrict alienation of beneficial interests and that the restrictions be enforceable under "nonbankruptcy law." Clearly, the ERISA plan purports to restrict alienation of beneficial interests. The Bankruptcy Court felt that the restrictions are enforceable under ERISA,[1] which the Bankruptcy Court referred to as "federal nonbankruptcy law."

---

1. *See* 26 U.S.C. § 401(a)(13); 29 U.S.C. § 1056(d)(1).

On appeal, the trustee maintains that Section 541(c)(2), despite its imprecise reference to "nonbankruptcy law," was intended by Congress to apply to state-law spendthrift trusts,[2] not to ERISA plans. This view is supported by the legislative history of the Bankruptcy Code, the interrelationship of the relevant Code sections, and the weight of authority.

The legislative history of the Bankruptcy Code describes Section 541(c)(2) only in terms of protecting interests in spendthrift trusts. According to the section-by-section analysis in the House Report, Section 541(c)(2) "preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6325. *See also,* S.Rep. No. 95–989, 95th Cong., 2d Sess. 83, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5869. Congress recognized that, under the existing Bankruptcy Act, a beneficial interest in a spendthrift trust was excluded from an estate. *See, e.g., In re Ahlswede,* 516 F.2d 784, 786 (9th Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). An overview comparison of the proposed Code and the old Act explained that,

> The bill also continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable state law.

H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 176 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6136. It does not appear anywhere in the legislative history that Congress contemplated application of Section 541(c)(2) to ERISA plans.

▆▆▆ The interrelationship of the relevant Code sections indicates that Congress

did not intend Section 541(c)(2) to apply to ERISA plans. First, 11 U.S.C. § 541(a)(1), (c)(1)(A) defines an estate to include all legal and equitable interests of the debtor, notwithstanding restrictions on transfer. Section 541(c)(2) merely provides an exception to the broad definition. Exceptions to a general statutory rule are construed narrowly, sensibly, and so as to give effect to the purposes of the statute. *See Brennan v. Valley Towing Co., Inc.,* 515 F.2d 100, 110 (9th Cir.1975). Congress plainly intended that a bankruptcy estate would include virtually everything a debtor owns. Section 541(c)(2) should be read narrowly so as to give effect to this intent. Second, employee benefit plans, including ERISA plans, are explicitly covered by the Code's exemption provision, 11 U.S.C. § 522 ("Section 522"). In fact, certain ERISA provisions are specifically referenced in Section 522(d)(10)(E)(iii). Clearly, Congress assumed that interests in employee benefit plans were to be included in an estate created by the commencement of bankruptcy proceedings. If such plans were routinely excluded from the estate, the exemption provision, as it relates to such plans, would not come into play. While it may be argued that Sections 541(c)(2) and 522(d)(10)(E) simply overlap, this argument leads to the dubious result that the vast multitude of ERISA plans would be covered by Section 541(c)(2), which makes no reference to such plans, and not by Section 522(d)(10)(E), which deals with such plans in relatively precise terms. Third, Section 522(d)(10)(E) provides a limited exemption for a debtor's interest in an employee benefit plan "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

It was with private plans particularly in mind that the Commission on the Bankruptcy Laws proposed the reasonable

---

**2.** The Fifth Circuit has described spendthrift trusts as follows:

> In general terms, a spendthrift trust is a trust created to provide a fund for the maintenance of a beneficiary, with only a certain portion of the total amount to be distributed at any one time. The settlor places "spendthrift" re-

strictions on the trust, which operate in most states to place the fund beyond the reach of the beneficiary's creditors, as well as to secure the fund against the beneficiary's own improvidence.

*Matter of Goff,* 706 F.2d 574, 580 (5th Cir.1983).

support limitation, because of the well-known fact that a corporate officer or a member of a professional corporation may be entitled to vested pension benefits aggregating hundreds of thousands of dollars. Plumb, *The Recommendations of the Commission on the Bankruptcy Laws—Exempt and Immune Property*, 61 Va.L.Rev. 1, 59 (1975) (citing Commission's note 8 to Proposed Bankruptcy Act § 4–503; S.Rep. No. 552, 91st Cong., 1st Sess. 201, 271 (1969)). *In re Graham*, 726 F.2d 1268, 1272 (8th Cir.1984). The reasonable support limitation on exemption would be undermined substantially if interests in ERISA plans could be excluded in their entirety under Section 541(c)(2).

Finally, all circuit courts that have considered the issue have held that Section 541(c)(2) excludes from an estate only state-law spendthrift trusts. *See In. re Graham*, 726 F.2d 1268 (8th Cir.1984); *Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982). *But see In re Threewitt*, 24 B.R. 927 (D.Kan.1982); *In re Pruitt*, 30 B.R. 330 (Bkrtcy.D.Colo.1983). The *Graham* and *Goff* cases reject application of Section 541(c)(2) to ERISA plans in particular.

██ This court concludes that Section 541(c)(2) was not intended to apply to ERISA plans. Accordingly, the court holds that Section 541(c)(2) is inapplicable to the debtor's interest in the White Metal profit-sharing plan.

## III. CONCLUSION

Section 541(c)(2) does not exclude from the estate White's interest in the White Metal profit-sharing plan. The Bankruptcy Court Order of August 22, 1984, must therefore be reversed. This court does not consider the issue of exemption under Section 522.

IT IS NOW, THEREFORE, ORDERED as follows:

1. The Bankruptcy Court's Order of August 22, 1984, is REVERSED.

2. William A. White's claim of an exemption for his interest in the White Metal profit-sharing plan is REMANDED for disposition consistent with this Order.

## ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

THIS MATTER comes before the court on the motion of Debtors William A. White and Cecelia B. White to alter or amend the court's Order of February 8, 1985. The court has reviewed the materials submitted in support of and in opposition to this motion and now finds and rules as follows:

In the court's Order of February 8, 1985, the court ruled that 11 U.S.C. § 541(c)(2) does not exclude interests in ERISA plans from an estate created by commencement of bankruptcy proceedings. The debtors now urge the court to consider whether the ERISA plan in this case is a spendthrift trust under RCW 6.32.250. In other words, the debtors argue that even if 11 U.S.C. § 541(c)(2) does not apply to ERISA plans per se, this section may apply to an ERISA plan that contains spendthrift provisions enforceable under state law.

Clearly, an ERISA plan cannot be a spendthrift trust under state law. ERISA supercedes all state laws with respect to ERISA plans. 29 U.S.C. § 1144(a). Therefore, RCW 6.32.250 does not apply in this case.

The debtor's motion to alter or amend judgment is therefore DENIED.

IT IS SO ORDERED.