**In re James J. McKENNA, Debtor.**

**Edward F. SAMORE, Trustee, Plaintiff,**

v.

**INDEPENDENT PENSION SERVICES, INC., Northwest Iowa Telephone Company; Charles Long; and James J. McKenna, Defendants.**

**Bankruptcy No. 83–04180.
Adv. No. 83–0652S.**

United States Bankruptcy Court,
N.D. Iowa, W.D.

Dec. 16, 1985.

**MEMORANDUM AND ORDER**

WILLIAM A. HILL, Bankruptcy Judge, Sitting by Designation.

This matter is before the Court on Complaint for Turnover filed by the Trustee on August 15, 1983. By said Complaint the Trustee asserts that he has an interest in and is entitled to possession of the Debtor's interest in the Northwest Iowa Telephone Company, Inc. employee's profit sharing plan. The Defendants, Independent Pension Services, Inc.; Northwest Iowa Telephone Company; Charles Long; and James J. McKenna assert that the Debtor's interest in the plan is exempt under section 541(c)(2) of the Bankruptcy Code and may also be exempt pursuant to provisions of the Iowa state exemption statute. The Debtor, James J. McKenna, denies at the outset that the plan constitutes property of the estate. The case has been submitted for decision on a Joint Stipulation of Facts filed November 4, 1983 and all parties at a hearing held on November 5, 1985 agreed that the case may be decided without further delay by the undersigned sitting by designation. The facts as stipulated may be stated as follows:

**FINDINGS OF FACT**

The Debtor was born on November 27, 1949 and commenced employment with the defendant, Northwest Iowa Telephone Company on December 1, 1973 and remained in its employ in 1983. Effective

December 1975 the telephone company adopted an employees profit sharing plan and trust agreement for its employees, said plan qualifying under the Employee Retirement Income Security Act of 1974 (ERISA). The defendant, Independent Pension Services, Inc., nka Midwest Pension Services, Inc. is a wholly owned subsidiary of Northwest and serves as a contracted plan consultant for the telephone company who itself, serves as the plans administrator. Defendant, Charles Long, is the plan's trustee.

The Debtor was a participant of the plan at the time of filing his Chapter 7 petition on June 24, 1983 and at that time had existing in the pension trust the sum of $11,223.60, eighty percent (80%) or $8,978.88 had vested. Presently, assuming the Debtor remains in the employ of Northwest, the Debtor's benefits under the plan are now 100% vested.

The plan is qualified as tax exempt under 26 U.S.C. § 401(a) and § 501(a) as amended by ERISA. Northwest makes contributions to the plan from its current or accumulated profits and while employees may, they are not required to themselves make contributions. The Debtor has made no individual contributions to the plan. The company's contributions are in an amount restricted by sections 401(a) and 501(a) of the Internal Revenue Code and the Plan specifically provides, as is required by section 401(a) and 29 U.S.C. § 1056(d), that plan benefits may not be assigned or alienated in any respect. Benefits under the plan are payable upon the occurrence of various events including retirement, disability, death or termination with the exact amount of the benefits upon such occurrence calculated according to a vesting schedule. A plan participant is entitled to payment only in the event of termination, retirement or death. Upon termination, a participant with less than 100% vesting may at the election of the profit sharing committee have his · distribution deferred until age 65 or death. A 100% vested participant is however entitled to immediate distribution upon termination.

## CONCLUSIONS OF LAW

The Debtor and the other defendants argue that because the plan in question is a qualified ERISA plan it is not includable as part of the bankruptcy estate by virtue of section 541(c)(2) which excepts spendthrift trusts. The Trustee takes the contrary position believing the effect of section 541(c)(1)(A) is to bring the plan into the estate, despite its alleged spendthrift provisions. All parties have filed briefs in support of their respective positions but at the time of briefing none had available to them the Eighth Circuit's decision of *In re Graham*, 726 F.2d 1268 (8th Cir.1984), handed down since the preparation and submission of briefs. The *Graham* decision is in accord with the majority of courts in holding that ERISA pension plans do constitute property of the estate and in so deciding the Eighth Circuit affirmed this bankruptcy court's own conclusion in that regard as set forth *In re Graham*, 24 B.R. 305 (Bankr.N.D.Iowa 1982).

The Appellate decision in *Graham* thoroughly reviewed the history of section 541(c)(1) and from the House and Senate Reports accompanying its passage, concluded the section was never intended by Congress to exclude a debtors ERISA plan benefits from the bankruptcy estate. It was the considered opinion of the Appellate Court that section 541(a)(1) be given a broad application and section 541(c)(2) be narrowly applied only to preserve traditional spendthrift trusts as recognized by state law. The Eighth Circuit has given clear directive to bankruptcy courts in this circuit when faced with ERISA questions. *Graham* mandates that a debtor's interest in an ERISA plan is to be included in the estate. *But see In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985) and *In Re McLean*, 762 F.2d 1204 (4th Cir.1985) which declined to accept the Eighth Circuit analysis of section 541(c)(2) and instead held that whether a particular pension fund interest ought to be included as estate property is determined by considering whether the restriction is enforceable under applicable

non-bankruptcy law. This is essentially the argument the Debtor and the other defendants make. It is their position that although the plan is an ERISA plan, it may by virtue of clearly defined spendthrift provisions contained therein, be regarded under Iowa law as a traditional spendthrift trust and thus, meet the requirements of section 541(c)(2). That is arguably true, and as they point out, the Northwest plan is not a beneficiary administered plan as was the plan under consideration in *Graham*. Although Bankruptcy Judge Thinnes in his *Graham* decision did review the Iowa state law requirements for a valid spendthrift trust, he did not reach the conclusion urged by the debtor. All that was said was that Graham's ERISA plan was not a valid spendthrift trust under Iowa law. Irrespective of whether an ERISA plan would be a valid spendthrift trust under Iowa law, Judge Thinnes held that section 541(c)(1) invalidates any ERISA assignment or alienation restrictions and in a footnote noted that from the fact that Congress provided an express exemption for ERISA plans in section 522(d)(10)(E) it is reasonable to infer that Congress did not intend ERISA plans to also be excepted under section 541(c)(2). *In re Graham*, 24 B.R. 305 at 311 n. 5.

The Eighth Circuit in its *Graham* decision did not distinguish between various types of ERISA plans and made no exception for those which but for bankruptcy law would constitute valid spendthrift trusts under state law. The Appellate Court quite unequivocably held that a debtor's interest in an ERISA pension is property of the estate subject only to available exemptions. The Eighth Circuit, reading section 541(c)(2) and 522(d)(10)(E) together, concluded that the question of pension rights cannot be resolved under section 541(c)(2) but is a matter of exemption and noted that state exemption systems provide for public and private pension plan exemptions:

> "There is no indication whatever that Congress intended section 541(c)(2) to be a broad exclusion which would apply to keep all debtors entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code's exemption provision, clearly indicating that they were intended and assumed to be part of the estate." 726 F.2d at 1272.

The Debtor's argument that section 541(c)(2) creates an exception for ERISA plans that otherwise would qualify as spendthrift trusts under Iowa law is contrary to the circuit court's position and therefore fails.

Although the Debtor's plan was 80% vested as of the date of his petition, it is the Defendants' argument that because the Debtor has no immediate right to payment and has no right to alienate or assign such payments, he has no interest which can become part of the bankruptcy estate. As noted in the Eighth Circuit's *Graham* decision, the filing of a bankruptcy petition creates an interest comprised of all legal and equitable interests of the debtor in property even *including* a beneficial interest in a spendthrift trust unless otherwise specifically exempt. *See also Matter of Crenshaw*, 44 B.R. 30 (Bankr.N.D.Ala. 1984). This all encompassing application given to section 541(a)(1) by the Eighth Circuit was again emphasized in the recent case of *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985). By definition, a beneficiary's vested interest in trust property is an equitable interest with the trustee retaining only legal title. *Re Skinners Guardianship*, 230 Iowa 1016, 300 N.W. 1 (1941). The Eighth Circuit in a case originating in Iowa has noted that with limited exception, ERISA rights once they are required to be vested, may not be lost by beneficiary. *Hepple v. Roberts & Dybdahl, Inc.*, 622 F.2d 962 (8th Cir.1980). The only provision for forfeiture in the Northwest plan is the beneficiary's failure to maintain employment for a significant period of service. The Debtor here had been employed nine years as of the date of the filing which would entitle him to 80% vesting. Assuming he is still an employee today he is by now fully vested. In the case of *Matter of Kelley*, 31 B.R. 786 (Bankr.N.

D.Ohio 1983), the debtor, a beneficiary under an ERISA plan similar to the Northwest plan, argued that even though vested, he had only an inchoate interest in the plan dependent upon death, disability or retirement and thus there was no present interest available to the bankruptcy estate. Rejecting this argument, the bankruptcy court in *Kelley* noted the debtor had a vested interest in certain of the contributions and the all pervasive reach of section 541(a)(1) was broad enough to bring that interest into the estate.

The Eighth Circuit's *Graham* decision also resolved the question of whether a federal exemption might be afforded ERISA benefits under section 522(b)(2)(A). The court held the federal exemption scheme as set out in section 522(b)(2)(A) does not afford a federal exemption for ERISA plan benefits. *See also In re White,* 47 B.R. 410 (W.D.Wash.1985); *In re Gillett,* 46 B.R. 642 (S.D.Fla.1985); *Matter of Crenshaw, supra.* Despite the inability to maintain an exemption under the federal exemption statute, an exemption may yet be available under state exemption provisions. Section 627.6(9)(e) of the Iowa Code accords to a resident of Iowa an exemption for a payment under a pension, annuity or similar plan. This issue was recently raised in *In re Pettit,* 55 B.R. 394 (Bankr.S.D.Iowa 1985). The plan settler in that case argued that an ERISA profit sharing plan was not specifically mentioned in section 627.6(9)(e) of the Iowa Code as contrasted to the federal exemptions set out in § 522(d)(10)(E) and therefore was not exempt under Iowa law. Judge Stageman held that based upon the general characteristics of pensions and annuities, the language of section 627.6(9)(e) including within the exemption, "similar plan or contract" was inclusive of ERISA plans.

The Debtor in the instant case, relying on his section 541(c)(2) non-inclusion argument, has not yet claimed the benefits as exempt and thus to address the exemption question any further may well be premature at this point. However, due to the length of time this case has been pending it

is well to at least indicate what the parameters of the state exemption are. This Court believes *In re Pettit* is well reasoned and ought to be followed in the Northern District as well. Section 627.6(9)(e) of the Iowa Code provides for the exemption of plan payments to the extent reasonably necessary for the present and future support of the debtor and his dependents. This includes future retirement needs as determined from the circumstances of the particular case. The Trustee argues that section 627.6(9)(e) exempts only those payments being presently received by an individual and since the Debtor is receiving no payments at present he can at the present time claim no exemption.

There is a slight variance in the language of section 522(d)(10)(E) of the Bankruptcy Code and section 627.6(9)(e) of the Iowa Code. The Bankruptcy Code exemption is, "the debtors right to receive" a payment while the Iowa exemption is for, "the debtors rights in a payment". The Iowa statute is ambiguous in that it could be construed to provide for an exemption only in a payment *presently* due under a plan as opposed to a right to receive payments coming due in the future. Most of the decisions deal with a right to present payments. E.g. *Matter of Kochell,* 31 B.R. 139 (W.D.Wis.1983); *In re Donaghy,* 11 B.R. 677 (Bankr.S.D.N.Y.1981). In view of the *Pettit* analysis this Court believes the language of section 627.6(9)(e) should be construed to include a right to receive future payments as well as a right in present payments. As noted by Judge Stageman the object of exemption statutes is to protect debtors and their families from the deprivation of those things "essential for their education, culture, and spiritual upbuilding" and the Iowa exemption statutes are given a liberal construction in order to carry out the object of the legislation. *In re Pettit, supra* citing *Frudden Lumber Co. v. Clifton,* 183 N.W.2d 201 (Iowa 1971); *Dunbar v. Spratt-Snyder Co.,* 208 Iowa 490, 226 N.W. 22 (1929). Were the exemption only applicable to present payments it would not

be necessary, as Judge Stageman suggests that it is, to consider a debtors future retirement needs because the Iowa exemption would not be even applicable to future payments. If a plan fund is reasonably necessary to the debtor's future support then the debtor's right to receive those funds in the future may qualify as exempt property.

From the foregoing analysis the Court concludes that the Debtor's right to ERISA funds vested at the time of the bankruptcy petition constitute property of the estate under section 541(a)(1) subject only to whatever exemption may be taken under Iowa law. Accordingly, IT IS ORDERED that judgment be entered in favor of the plaintiff, Edward F. Samore for turnover by the Trustee of Northwest Iowa Telephone Co., Inc. Employee's Profit Sharing Plan Trust of the sum of $8,978.88 representing the Debtor, James J. McKenna's vested interest in the plan.